PAMELA J. MAHONEY,

                Plaintiff,

      v.                                                  Case No. 24-cv-1623-bhl

FRANK BISIGNANO
Commissioner of the Social Security
Administration,

                Defendant.

## DECISION AND ORDER

Plaintiff Pamela J. Mahoney seeks review of a final decision of the Commissioner of the Social Security Administration, denying her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §405(g).  For the reasons set forth below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

On August 19, 2021, Mahoney applied for disability insurance benefits alleging a disability onset date of April 13, 2021, when she was 59 years old.  (ECF No. 7-1 at 96, 221.)  Mahoney alleged the following impairments: bulging discs, deafness or hearing loss, headaches, spinal stenosis, and hiatal hernia.  (*Id.* at 96.)  After her claims were denied initially and on reconsideration, she requested a hearing before an administrative law judge (ALJ).  (*Id.* at 126–27, 140.)  The ALJ held a hearing on November 15, 2023 and, in a May 2, 2024 decision denied Mahoney's disability claim, concluding that Mahoney was not disabled.  (*Id.* at 25–42.)

The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled, *see* 20 C.F.R. §404.1520(a), and found that Mahoney had the following severe impairments:  degenerative disc disease of the cervical and lumbar spine, headaches, left shoulder dysfunction (a superior labrum, anterior and posterior (SLAP) left shoulder tear, status post-April 2021 surgical repair), and left ear hearing loss.  (*Id.* at 28.)  As a result of these impairments, the ALJ also found that Mahoney was restricted to light work with a number of

additional restrictions. (*Id.* at 32.) The ALJ further found that Mahoney remained capable of performing her past relevant work as an account executive and clinic clerk and therefore concluded Mahoney was not disabled. (*Id.* at 42.) On October 31, 2024, the Appeals Council denied Mahoney's request for review of that decision. (*Id.* at 6–8.) Mahoney now seeks judicial review pursuant to 42 U.S.C. §405(g).

## BACKGROUND

According to her application, Mahoney has a high school education, one year of college, and reported past work as an account sales representative. (ECF No. 7-1 at 252.) She was last employed part-time as a hospital registration clerk, a position she held for four years, and stopped working on July 29, 2021 because of her conditions. (*Id.* at 708.) In a Function Report, Mahoney indicated that her "ability to work is most significantly impacted" by "lifting, walking, hearing, stair climbing and panic attacks." (*Id.* at 282.) Mahoney further stated that he is deaf in her left ear and has daily ringing which impacts her mood. (*Id.*) She explained that she has difficulty falling and staying asleep, spends the night tossing and turning, and does not feel rested come morning. (*Id.* at 283.) She described panic attacks characterized by rapid heartbeat, shortness of breath, and pain or tightness in the chest, as well as general anxiety which causes her to feel worried and tense. (*Id.* at 287.) When she is under stress, Mahoney stated she has anxiety and irritability, feels overwhelmed, and struggles to concentrate or sleep, and she is at risk of having a panic attack. (*Id.* at 289.)

Consultative examiner, Kurt A. Weber, Ph.D., conducted a psychological evaluation of Mahoney on May 11, 2022. (*Id.* at 708–712.) Dr. Weber first reviewed available evidence indicating Mahoney had been diagnosed with depression but was not engaged in formal mental health treatment at the time. (*Id.* at 708.) He conducted an interview and mental status examination that revealed a number of symptoms, including depressed/hopeless mood, loss of interest or pleasure in life, becoming easily annoyed or irritable, feelings of nervousness or anxiety, and poor sleep. (*Id.* at 708–09.) Mahoney exhibited generally adequate ability to recall remote events and an intact immediate memory; however, she was unable to recall three words presented to her after a period of several minutes. (*Id.* at 710.) Mahoney indicated that she could perform some housework, laundry, and cooking, travel independently, and shop for food and clothing by herself. (*Id.* at 709.)

Dr. Weber diagnosed Mahoney with adjustment disorder with anxiety and depressed mood and unspecified depressive disorder, by history. (*Id.* at 711.) He rated Mahoney's prognosis "fair," and he recommended that she enter psychotherapeutic care and consider psychoactive medication to help manage her emotional concerns. (*Id.*) Dr. Weber concluded, "on the basis of the examinations and psychological assessments administered at this time," that Mahoney would have mild limitations in concentrating, persisting, or maintaining pace, but that she would have moderate limitations in interacting effectively, adapting/managing, and understanding, remembering, and applying information. (*Id.* at 711–12.)

Two state agency psychologists also evaluated Mahoney. Catherine Bard, Psy.D., and Carol Mohney, Ph.D., both found Mahoney to have a severe depressive disorder resulting in mild limitations in performing the basic mental work demands which fall under the general functional categories of adapting or managing, and of understanding, remembering, or applying information. (*Id.* at 99, 111.)

During the administrative hearing, Mahoney testified that she had to stop working because she "wasn't concentrating" and her headaches and back "were bad." (*Id.* at 65.) She also testified that although she feels like she has depression and anxiety, she is "not one to take a bunch of medication" as prior medication either hindered her sleep or made her feel groggy. (*Id.* at 76.) She also confirmed she was not in therapy. (*Id.*) Following her testimony, a vocational expert classified Mahoney's past relevant work and testified that a person with the hypothetical residual functional capacity proposed by the ALJ could perform such work. (*Id.* at 82–85.) However, the vocational expert further testified that Mahoney's past relevant work would be precluded if "due to a combination of physical and mental impairments or symptoms, including but not limited to the experience of pain, [Mahoney] would be limited to understanding, remembering or carrying out only simple instructions and routine tasks, in a work environment with no fast paced production quota or rate." (*Id.* at 85.)

At step one of his analysis, the ALJ concluded that Mahoney had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 27.) The ALJ next found at step two that Mahoney had severe impairments of degenerative disc disease of the cervical and lumbar spine, headaches, left shoulder dysfunction (a SLAP left shoulder tear, status post-April 2021 surgical repair) and left ear hearing loss. (*Id.* at 28.) At step three, the ALJ determined that none of those impairments met or equaled any of the agency's listings of impairments. (*Id.* at 31.) The ALJ then

found Mahoney had the Residual Functional Capacity (RFC) "to perform less than the full range of light work light as defined in 20 C.F.R. §404.1567(b)," with the following additional limitations:

> She can lift, carry, push or pull up to 20 pounds occasionally and up to 10 pounds frequently. She can sit, stand or walk up to six hours each in an 8-hour workday. She can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs but never climb ladders, ropes or scaffolds. She can frequently reach side to side and to the front but only occasionally reach overhead with the left upper extremity. She must avoid concentrated exposure to extremes of cold or vibration. She must avoid concentrated exposure to workplace hazards (including moving machinery and unprotected heights). She must avoid exposure to more than moderate levels of noise ("moderate" defined as that degree of noise found in ordinary retail or office settings).

(*Id.* at 32.) At step four, the ALJ found Mahoney remained capable of performing her past relevant work as an account executive (DOT 259.357-018, light, skilled), and a clinic clerk (DOT 205.362-018, sedentary, semi-skilled). (*Id.* at 42.) The ALJ therefore determined that Mahoney was not disabled.

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053–54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [a reviewing court] to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review." *Id.* at 1054 (cleaned up) (citations omitted).

In reviewing the record, the Court does not displace the ALJ's judgment by reweighing evidence, resolving evidentiary conflicts, or deciding questions of credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Judicial review is deferential and is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)). If substantial evidence supports the ALJ's disability determination, the decision must be affirmed, "even where reasonable minds might disagree about the outcome." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023).

## ANALYSIS

The ALJ concluded that Mahoney's mental impairments were non-severe and did not warrant RFC restrictions. Mahoney contends the ALJ "legally erred" by failing to consider the impact of mild mental limitations in formulating the RFC.[1] (ECF No. 11 at 6.) The record confirms, however, that in determining Mahoney's mental impairments were only mildly limiting, the ALJ assessed Mahoney's mental status examinations, her reported activities, her own statements, and the lack of mental health treatment. The ALJ also relied on state agency reviewing psychologists who did not identify any mental residual functional capacity restrictions. The ALJ's decision is therefore supported by substantial evidence and will not be disturbed.

The ALJ's analysis began with an overview of Mahoney's treatment history and noted that she "did not allege any disabling mental health impairments" in her September 2021 disability report but in her March 2022 function report did complain of panic attacks, being easily annoyed by others, and not handling stress well. (ECF No. 7-1 at 29.) The ALJ referenced the treatment notes of Mahoney's primary care physician who indicated that Mahoney experienced some mild depression due to her medical conditions but declined treatment and counseling. (*Id.* (citing ECF No. 7-1 at 625).)

Mahoney was referred for a consultative examination due to the lack of formal mental health treatment and was evaluated by Kurt A. Weber, Ph.D. (*Id.* at 29.) Mahoney informed Dr. Weber that she was primarily prevented from working by her "physical conditions." (*Id.* (citing ECF No. 7-1 at 708–709).) Mahoney indicated that she could perform some housework, do the laundry, travel independently, and shop in-person. (*Id.*) Dr. Weber noted that she was attentive

---

[1] Mahoney does not challenge the ALJ's evaluation of her physical impairments. As such, any subsequent challenge is waived. *United States v. Bard*, 73 F.4th 464, 473 (7th Cir. 2023) ("[A]rguments not raised in a party's opening brief are waived . . . . [W]e do not consider it further.").

and cooperative during their conversation with no outward display of irritability. (*Id.*) Mahoney exhibited normal affect, speech, thought process, thought content, fund of knowledge, insight, and judgment. (*Id.* (citing ECF No. 7-1 at 710).) She was also able to count backward by threes and perform a three-step set of instructions without issue. (*Id.*) Although Mahoney had some issues remembering words after several minutes, her immediate and remote memory were intact. (*Id.*)

The ALJ then assessed Mahoney's functioning in the four "paragraph B" categories. (*Id.* at 30 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).) With respect to Mahoney's ability to understand, remember, or apply information, the ALJ reasonably determined that she had only a mild limitation. (*Id.*) While the ALJ acknowledged that Mahoney "reported some problems understanding conversations," she "denied difficulty understanding, remembering, following instructions or completing tasks." (*Id.* (citing ECF No. 7-1 at 288, 317).) The ALJ further noted that although Mahoney struggled with some memory recall during her consultative examination, "remaining mental status exams do not show any comprehensive or memory deficits." (*Id.* (citing ECF No. 7-1 at 619, 683, 798, 850, 856–57).)

In the area of interacting with others, the ALJ reasonably found that Mahoney had no limitation. (*Id.*) Although Mahoney reported that she became easily annoyed and felt anxious around others, providers consistently noted Mahoney to be "pleasant, cooperative and well-appearing, with a normal mood, normal affect and normal behavior." (*Id.* (citing ECF No. 7-1 at 414, 429, 441, 530, 536–37, 568, 619, 641, 700, 776).) Mahoney also indicated that she had no issues with authority figures and reported shopping in-person, attending church weekly, and regularly socializing with friends and family. (*Id.* (citing ECF No. 7-1 at 285–86).)

In the area of concentrating, persisting or maintaining pace, the ALJ reasonably determined that Mahoney had no limitation. (*Id.*) Although Mahoney reported only being able to pay attention for one to five minutes, she had no issues completing tasks. (*Id.* (citing ECF No. 7-1 at 285, 317).) Furthermore, the ALJ noted that Mahoney reported reading the newspaper and solving crossword puzzles and noted that her mental status examinations did not mention any difficulty with attention. (*Id.* (citing ECF No. 7-1 at 286, 317, 683, 798, 850, 856–57).).

Finally, in the area of adapting or managing oneself, the ALJ reasonably determined that Mahoney had only a mild limitation in adapting or managing oneself. (*Id.*) Although Mahoney indicated that she does not handle stress or changes in routine well, she also reported no issues with performing personal care, preparing meals, completing household chores, taking medication,

and managing her finances. (*Id.* at 30–31 (citing ECF No. 7-1 at 283–85).) Given this evidence and the absence of any documented mental health treatment, the ALJ reasonably found that Mahoney's mental impairments were non-severe. (*Id.* at 31.)

The ALJ's analysis continued when discussing Mahoney's RFC. The ALJ observed that the state agency reviewing psychologists assessed—at most—mild limitations with respect to Mahoney's mental impairments, noting that "the evidence supports no more than mild limitations in any functional area." (*Id.* at 40.) Like the ALJ, Drs. Bard and Mohney assessed no mental RFC restrictions at all. (*Id.* at 104, 115.) Moreover, when evaluating Mahoney's subjective claims of disabling symptoms, the ALJ once again noted her various activities, including weekly church attendance, socializing with friends, and a two-week Hawaiian vacation in February 2023, which suggested "that the alleged symptoms and limitations may have been overstated." (*Id.* at 39.) Finally, the ALJ found that Mahoney's "lack of formal mental health treatment and normal mental status exams" did not support significant ongoing mental health limitations. (*Id.* at 41.)

The ALJ's assessment was therefore in line with the state agency reviewing psychologists' findings that Mahoney had only mild mental limitations, which required no corresponding RFC restrictions. (*Id.* at 104, 115.) This evidence substantially supported the ALJ's conclusion that the record did not necessitate mental RFC restrictions. *See Felts v. Saul*, 797 F. App'x 266, 269 (7th Cir. 2019) (finding ALJ's conclusion that claimant did not require mental limitations in the RFC assessment was supported by the opinion from the state agency psychologist, who reviewed evidence including the consultative examiner's opinion, and concluded claimant did "not have more than mild limitations.").

As previously noted, an ALJ's decision should be affirmed when the ALJ minimally articulates the bases for his conclusions. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (the minimal articulation requirement is "an obligation that extends no further than grounding a decision in substantial evidence.") (citing *Warnell*, 97 F.4th at 1053)). As the Seventh Circuit recently explained, "[Mahoney] must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *See id.* at 470. Mahoney fails to point to any evidence warranting remand. The ALJ's decision is supported by substantial evidence and is affirmed.

**CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on March 30, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge